UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

**IRAN NEAL et al.**                                                            **PLAINTIFFS**

**v.**                                                    **CIVIL ACTION NO. 3:04CV-13-S**

**PAULETTE CARRON et al.**                                              **DEFENDANTS**

## MEMORANDUM OPINION

This matter is before the Court on remand from the Sixth Circuit Court of Appeals for

further consideration of certain claims asserted by Plaintiff Iran Neal.  For the reasons that

follow, the federal 42 U.S.C. § 1983 individual capacity claims for monetary damages arising

under the First and Fourteenth Amendments and the state-law claims arising under Sections 1, 2,

and 14 of the Kentucky Constitution will proceed against Defendants Paulette Carron, David

Mounden, Deborah McGill, Michael O'Connor, John Coy, Lutitia F. Papailler, Robert W.

Milburn, Theodore Kuster, MLY, Vertner Taylor, Hazel M. Combs, and Sam Givens, Jr.  All

other claims will be dismissed.

## I.  PROCEDURAL HISTORY

Without the assistance of counsel, five plaintiffs filed the instant action pursuant to 42

U.S.C. § 1983 against twenty-four defendants.[1]  At the time the complaint was filed, Plaintiffs

---

[1]The defendants are Probation and Parole Officer Paulette Carron; Parole Officer Roach; Deborah McGill, "Parole Officers District Supervisor" in Louisville; David Mounden, Supervisor of the Division of Probation and Parole in Louisville; Michael O'Connor, Administrative Law Judge for the Parole Board; Parole Board members Lutitia F. Papailler, Laurrece Carter-Hatchett, Theodore Kuster, JC, MLY, Verman Ray Winburn, Robert W. Milburn, James Provence, and Patricia Combs; the Executive Director of the Parole Board, Keith Hardison; the Chairman of the Parole Board, John Coy; Linda F. Frank, former Parole Board Chair and former Crime Victims Compensation Board Chair; Jefferson County Commonwealth's Attorney David Stengel; former Attorney General of Kentucky Albert B. Chandler III; Vertner Taylor, former Commissioner of Corrections; Hazel M. Combs, Deputy Commissioner of Corrections; Kentucky Court of Appeals Clerk George M. Geoghegan III and Chief Deputy Clerk Sam Givens, Jr.; and Sally Isaacs, employed by Legacy Homes/Legacy Development Corporation.

Iran Neal and Craig Dunn were inmates incarcerated at the Eastern Kentucky Correctional Complex;[2] Plaintiff Marrissa McMillen was Neal's fiancée over whom he had power of attorney; and Plaintiffs Marran Neal McMillen and Nasir Nari McMillen, were Neal's and McMillen's minor sons. Although five plaintiffs were listed in the caption, Plaintiff Neal seems to have been the sole preparer of the complaint.

On initial review of the complaint pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), the Court dismissed the claims brought by Plaintiffs Marrissa, Marran and Nasir McMillen, finding that Plaintiff Neal could not represent them because he was not an attorney. Alternatively, even if Plaintiff Marrissa McMillen had the capacity to represent herself, the Court concluded that she stated no viable claims. The Court dismissed Plaintiff Dunn's claims as lacking in specificity. As to Plaintiff Neal's claims, the Court first found that Defendant Sally Isaacs was not a state actor. It then found that Plaintiff Neal had not specified in which capacity he had sued the remaining twenty-three state defendants and thus concluded that those defendants had been sued in their official capacities. Having made that determination, the Court next dismissed the claims based on Eleventh Amendment immunity, *Heck v. Humphrey*, 512 U.S. 477 (1994), and *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). Finally, this Court declined to exercise supplemental jurisdiction over the state-law claims.

Plaintiff Neal and his minor sons appealed this Court's decision. The Sixth Circuit concluded that Plaintiff Neal could not represent his children on appeal because he was not an attorney. *Neal v. Carron*, No. 04-6134 (6th Cir. July 7, 2005). The Sixth Circuit further found

---

[2]Plaintiff Neal appears to have been released from incarceration (DN 37).

2

that "the district court properly analyzed Neal's claims against defendant Sally Isaacs . . . and against the other defendants in their official capacities."  Because, however, the district court "[e]vidently . . . overlooked Neal's statement, towards the end of his lengthy complaint, that he was suing the defendants in both their individual and official capacities,"[3] the Sixth Circuit remanded the case for this Court's consideration of Neal's claims against the remaining twenty-three defendants in their individual capacities for monetary damages.  As all federal claims were not dismissed, the Sixth Circuit likewise remanded Neal's state-law claims for consideration, along with his requests for an instruction ordering defendants to pay the cost of this action and for a jury trial.

## II. SUMMARY OF CLAIMS

As Plaintiff Neal is the only remaining plaintiff in this action, this summary contains his claims only.  Neal broadly asserts that the defendants revoked and conspired to revoke his parole,[4] and he claims violations of his rights under the Fifth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 1, 2, 14, and 17 of the Kentucky Constitution during the parole revocation process.

More specifically, the plaintiff claims that after he was on parole for three years and nine months, Defendant Probation and Parole Officer Paulette Carron directed him to report to her on September 26, 2002.  On that date, Defendant Carron accused him of moving without permission

---

[3]On further review of the complaint, this Court found Plaintiff Neal's statement buried in the middle of the 50th page of the 55-page, single-spaced, handwritten document.

[4]The plaintiff claims that "the defendants all knew the exact parameter of the plan.  They all performed a joint course of conduct.  They all shared the same conspiratorial objectives."  (Compl., ¶ 26).  He further claims hat "[e]mployees of the Division of Probation and Parole, of the Parole Board, of the Dept. of Corrections, of Community Services and Local Facilities are rewarded pay raises, monetary incentives and promotions to return or cause the return of parolees to prison."  (Compl., ¶ 34).

and arrested him.  Despite Carron's accusation, the plaintiff contends that he advised her on September 16, 2002, about his move to 2703 Muhammad Ali Blvd.  He also contends that Carron's supervisor, Defendant David Mounden, and their district supervisor, Defendant Deborah McGill, had knowledge of the plaintiff's new address.

According to the plaintiff, he tried to explain to Defendant Carron that he had to care for his then 20-year-old fiancée, who had scoliosis and a learning disability, and their son.[5]  He also asked Carron if she would consider an alternative to parole revocation given that this was his first violation and only a minor technical violation at that.  Carron advised that she would speak with her supervisor.  When the plaintiff asked why he was going to jail, Carron stated, "I want you in jail where I know where you're at."[6]  (Compl., ¶ 10).  On September 30, 2002, when Carron gave the plaintiff a copy of his parole violations, he again asked her about an alternative, but Carron responded that she still had not talked to her supervisor.  Although Carron had not talked to her supervisor, the plaintiff alleges that he, his family members, and members of the community left messages with Defendant Carron and her supervisor, Defendant David Mounden, asking them to consider alternatives to revocation but that they never responded.

At the preliminary revocation hearing held on October 15, 2002, Defendant Administrative Law Judge ("ALJ") Michael O'Connor purportedly prohibited the plaintiff from adequately cross-examining Parole Officer Carron by "continually interrupting and arrogantly and blatantly stat[ing] let the parole board sort it out and make sense of."  (Compl., ¶ 2).  The

---

[5]At the time of the parole revocation, Plaintiff Neal had only one son, Marren.  On July 23, 2003, his fiancée gave birth to their second son, Nasir.

[6]On another occasion in the complaint, the plaintiff contends that Carron stated, "we want you in jail where we know where you're at." (Compl., ¶ 27).

plaintiff tried to explain to the ALJ that Carron was withholding from evidence a letter he sent to her giving her prior written notice of his change of address, but the ALJ ignored the evidence. Additionally, the ALJ would not allow the plaintiff's witnesses, his pastor and his fiancée, to testify on his behalf. When the plaintiff asked if he could testify, ALJ O'Connor "sarcastically stated go ahead probable cause has already been found." *Id.* The plaintiff thus claims that the ALJ failed to consider all of the evidence before making a probable cause finding.

At the final parole revocation hearing on November 15, 2002, the Parole Board revoked Plaintiff Neal's parole for changing his address without approval of his parole officer, for failure to report a change in address to his parole officer, and for providing false information regarding his address. The Board deferred parole for 15 months. The plaintiff claims that the Board's revocation decision for these minor technical violations was based on unreliable, factually lacking, arbitrary, erroneous, highly prejudicial information from ALJ O'Connor. According to the plaintiff, the Parole Board "failed to factually find [him] guilty," never attempted to resolve any contested relevant facts, and failed to provide him with a written statement as to the evidence on which it relied in revoking his parole. He claims that the information relied upon by the Parole Board was "so substantially erroneous, unreliable and unfactual," (Compl., ¶ 3), that the Board did not even know the address from where he allegedly illegally moved. He further claims that the Parole Board destroyed the tape of the preliminary revocation hearing to conceal the allegedly unlawful acts of the ALJ.

The plaintiff sues all members of the Parole Board. In the complaint, however, he mentions only four. Defendant Parole Board Chairman John Coy issued the parole violation warrant (Compl., Ex. EE1), and he denied the plaintiff's motion to reconsider parole revocation,

finding the motion untimely (Compl., ¶ 5 and Ex. KK).  Defendant Executive Director Keith

Hardison responded to two of the plaintiff's Open Records Requests.[7]  Defendant Linda Frank

was Chairman of the Parole Board in 1998, when parole was granted and when special

conditions of parole were imposed, including the requirement that the plaintiff pay $110.00 to

the Crime Victims Compensation Fund (Compl., ¶ 34).  The plaintiff asserts that "[t]hese

payments were conditions of [his] parole subjecting him to revocation had he failed to pay which

constitutes extortion by wrongful use of fear in violation of the Hobbs Act 18 U.S.C.A. § 1951."

*Id.*  Defendant Verman Winburn was "officiating Plaintiffs' 1998 parole board hearing," *id.*, and

"is still a member of the parole board that issued a warrant returning Plaintiff to prison October

24, 2002."  *Id.*  In addition to the complaint referencing the four, aforementioned Parole Board

defendants, the final parole decision, which the plaintiff attached to the complaint, reveals that

the hearing board was comprised only of Defendants Lutitia Papailler, Robert Milburn, Theodore

Kuster, and MLY (Compl., Ex. LL).  There is no mention or reference in either the complaint or

its attachments to Defendant Parole Board Members Laurrece Carter-Hatchett, JC, James

Provence, or Patricia Combs.

During the parole revocation process, the plaintiff filed various state court actions in an

initial attempt to stay the parole revocation process and in a later attempt to overturn the parole

revocation decision.  He claims that "Defendants Sam Givens Jr. and George M. Geoghegan III

---

[7]In the first response, Hardison notified the plaintiff that the Parole Board does not maintain
custody of various documents related to his parole supervision but does maintain audiotapes of
preliminary and final revocation hearings for a fee (Compl., Ex. BB).  In the second response, Hardison
advised the plaintiff that the Parole Board does not have a copy of the tape of the preliminary revocation
hearing as the recorder destroyed the tape the last time it was copied (Compl., Ex. FF).  Hardison further
advised that the Board does not have any of the copies that were made as those copies were sent outside
of the office and left the Board's control.  *Id.*

even though knowing [he] was seeking a stay of the [ALJ's] decision/finding, held the CR 81

Writ back over 30 days, . . . denying [him] access to the court, wilfully preventing [his] appeal of

Jefferson Circuit Court Judge Barry Willett's decision." (Compl., ¶ 9).

In particular, the plaintiff claims that on October 19, 2002, he sent a CR 81 Writ of

Prohibition and/or Mandamus ("CR 81 Writ")[8] to the Jefferson and Franklin District and Circuit

Courts and to the Jefferson and Franklin County Attorneys' Offices.  In his CR 81 Writ, he

sought a stay of the revocation proceedings.  On November 25, 2002, the plaintiff received from

the Kentucky Court of Appeals, the CR 81 Writ that he had mailed to the Franklin District and

Circuit Courts and County Attorney's Office.[9]  The plaintiff contends that although the Court of

Appeals received the CR 81 Writ in late October, Defendant Chief Deputy Clerk Sam Givens,

Jr., held the CR 81 Writ for over 30 days, *i.e.*, the plaintiff did not receive notice that the

documents were deficient until November 25, 2002.  He reports that he made the corrections and

re-served all parties on November 26, 2002.  Shortly before Christmas, the plaintiff received a

motion to dismiss the CR 81 Writ, which was filed two days beyond the time limit.  Then on

February 7, 2003, the Court of Appeals dismissed the CR 81 Writ for lack of jurisdiction because

the writ should have been filed "'in the circuit court in the county in which the inmate is

incarcerated.'" (Compl., Ex. FF1).

In the meanwhile, by Order entered February 6, 2003, Jefferson Circuit Court Judge

Barry Willett denied the plaintiff's CR 81 Writ filed in Jefferson Circuit Court.  On February 20,

---

[8]Under the Kentucky Rules of Civil Procedure, CR 81 provides, "Relief heretofore available by the remedies of mandamus, prohibition, scire facias, quo warranto, or an information in the nature of a quo waranto, may be obtained by original action in the appropriate court."

[9]The plaintiff claims that the Franklin District and Circuit Courts and County Attorney's Office had apparently transferred their copies to the Kentucky Court of Appeals.

2003, the plaintiff appealed Judge Willett's decision to the Court of Appeals.  The Court of

Appeals returned the appeal documents (apparently due to some deficiency) to the plaintiff, who

in turn re-submitted them to the Court of Appeals on March 7, 2003.

> [Those documents] were again returned to [the plaintiff] stamped, showing they
> were received March 10, 2003, enclosed with . . . Chief Deputy Clerk, Sam
> Givens Jr's letter dated March 10, 2003 acknowledging they were initially
> received Feb 24, 2003, acknowledging the ORDER being appealed was entered
> Feb. 6, 2003, yet telling [the plaintiff] the 30 days has expired.  From Feb. 6, 2003
> to Feb. 24, 2003 is 18 days.

(Compl., ¶ 8).

As to his claims against Defendant former Attorney General Chandler and Defendant

Commonwealth's Attorney Stengel, the plaintiff claims that neither of those defendants

responded to the CR 81 Writ filed in Jefferson County (Compl., ¶ 36).  As to the claims against

Defendants Commissioner Taylor and Deputy Commissioner Hazel Combs, the plaintiff

contends that they had prior knowledge of his address change and that they conspired with

Carron, her supervisor, and their district supervisor to unlawfully force him into prison.  He

further claims that by statute, Defendants Taylor and Combs could have recommended an

alternative to parole revocation but did not.  With respect to Defendant Mr. Roach, the following

sentence appears to be the only reference to that defendant in the entire complaint:  "These same

CPP, KRS 439.480(3)(8) KRS 439.430, KRS 439.470, apply to Defendant Mr. Roach whom was

Plaintiff Craig Dunn's parole officer."

Finally, the plaintiff claims that the defendants conspired to force him into prison.  And

he asserts an equal protection violation broadly contending that "[m]any other probationers and

parolees, particularly when accused of allegedly committing their first minor technical violation,

8

. . . are granted continuances, leniency, alternatives, suitable methods, in lieu of incarceration."

(Compl., ¶ 25).

### III.  LEGAL STANDARD

According to 28 U.S.C. § 1915(e), this Court must review the instant action.  Upon

review, this Court must dismiss a case if it determines that the action is frivolous or malicious,

fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant

who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B); *McGore v. Wrigglesworth*, 114

F.3d 601 (6th Cir. 1997).  A complaint may be dismissed as frivolous if it is premised on a

nonexistent legal interest or delusional factual scenario.  *Neitzke v. Williams*, 490 U.S. 319, 329-

30 (1989).  A complaint, or portion thereof, should be dismissed for failure to state a claim upon

which relief may be granted "only if it appears beyond a doubt that the plaintiff can prove no set

of facts in support of his claim that would entitle him to relief."  *Brown v. Bargery*, 207 F.3d

863, 867 (6th Cir. 2000).  In reviewing a complaint under this standard, the Court must accept all

factual allegations contained in the complaint as true and must also construe the pleading in the

light most favorable to the plaintiff.  *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th

Cir. 1998).

### IV.  ANALYSIS

### A.  42 U.S.C. § 1983

As a preliminary matter, the Court notes that while Plaintiff Neal asserts violations of the

Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, he alleges a denial

of access to courts, which is a First and Fourteenth Amendment claim, and he alleges due

process and equal protection violations, which, in this instance, are more appropriately

Fourteenth Amendment claims as he is suing state actors.  *See*, *e.g.*, *United States v. Ovalle*, 136 F.3d 1092, 1104 (6th Cir. 1998) ("Although they invoke both the Fifth and Fourteenth Amendments, appellants' claims are based on federal government action, not the action of a state, and are thus governed by the Fifth Amendment.").  As the plaintiff has failed to demonstrate how either the Fifth or Eighth Amendment applies to the facts alleged in this action, the purported Fifth and Eighth Amendment claims will be dismissed as frivolous.

### 1. Denial of access to courts

The plaintiff essentially alleges denied access to courts when Kentucky Court of Appeals Chief Deputy Clerk Givens (1) delayed the processing of his CR 81 Writ in the Court of Appeals and (2) prohibited him from filing an appeal of the circuit court's denial of his CR 81 Writ.  To state a claim for a denial of access to the courts, a prisoner must demonstrate "that a nonfrivolous legal claim ha[s] been frustrated or [is] being impeded."  *Lewis v. Casey*, 518 U.S. 343, 355 (1996).  That is, a prisoner must show that an actionable claim challenging his sentence or conditions of confinement "has been lost or rejected, or that the presentation of such a claim is currently being prevented."  *Id.* at 356.

The plaintiff has not shown that a nonfrivolous claim was frustrated or destroyed by Chief Deputy Clerk Givens' delay in filing the CR 81 Writ.  The plaintiff did not intend to file the CR 81 Writ in the Court of Appeals.  Instead, the Franklin Circuit and District Courts and County Attorney transferred their documents to the Court of Appeals.  Because of the transfer, Clerk Givens sought to insure that Plaintiff Neal's petition satisfied the necessary filing requirements by sending deficiency notices to him.  Plaintiff Neal does not allege that Clerk Givens dismissed the action for failure to comply with filing requirements.  Rather, he reports

that the action was dismissed for lack of jurisdiction.  The dismissal for lack of jurisdiction was a decision rendered by the Court of Appeals and not by Chief Deputy Clerk Givens.  Moreover, the CR 81 Writ filed in the Court of Appeals was a frivolous action because such writ was improperly filed in that court.  *Shepherd v. Wingo*, 471 S.W.2d 718, 719 (Ky. 1971) ("'If the (Parole) board should in any case abuse its authority in rearresting a convict, the remedy is by a proceeding in the circuit court of the proper county to obtain a writ of mandamus requiring the board to proceed proper[l]y, and in that judicial proceeding the facts may all be shown, and either party aggrieved by the decision may appeal to this court.'") (quoting *Bd. of Prison Com'rs. v. Crumbaugh*, 170 S.W. 1187 (Ky. App. 1914)).

As the plaintiff has failed to demonstrate that the presentation of a nonfrivolous claim was lost or rejected by Defendant Givens in his handling of the original CR 81 Writ filed in the Kentucky Court of Appeals, he has failed to state a viable denial-of-access-to-courts claim against that defendant, and that claim will be dismissed.

The same conclusion is not reached, however, at least at the early screening stage of the litigation, as to the plaintiff's claim that Defendant Givens would not allow him to file an appeal of Jefferson Circuit Judge Willett's denial of his CR 81 Writ.  The Court cannot say, at this point in the proceedings, that Defendant Givens has not frustrated a nonfrivolous claim.  The Court will thus allow this claim to proceed beyond initial screening.

### 2.  **Equal protection**

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."  *City of*

11

*Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985).  To prove a violation of the

Equal Protection Clause, a plaintiff must allege an invidious discriminatory purpose or intent.

*Washington v. Davis*, 426 U.S. 229 (1976); *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256

(1979).  "'Discriminatory purpose' . . . implies more than intent as volition or intent as

awareness of consequences.  It implies that the decisionmaker . . . selected or reaffirmed a

particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects

upon an identifiable group."  *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. at 279.

Here, the plaintiff broadly claims that he was treated differently than other parolees.  He

fails, however, to identify other similarly situated parolees who have been treated differently,

and he fails to allege any discriminatory purpose or intent on the part of any defendant.  For

these reasons, the plaintiff's broad and conclusory equal protection claim must be dismissed for

failure to state a claim upon which relief may be granted.

### 3.  Due process

The plaintiff effectively argues that the procedures used to revoke his parole violated his

right to due process under the Fourteenth Amendment.  At this nascent stage in the litigation, the

Court will allow the due process claims to proceed against the following defendants in their

individual capacities for monetary damages:  Paulette Carron, David Mounden, Deborah McGill,

Michael O'Connor, John Coy, Lutitia F. Papailler, Robert W. Milburn, Theodore Kuster, MLY,

Vertner Taylor, and Hazel M. Combs.

### 4.  Failure to state a cognizable claim

In order to assert a cognizable § 1983 claim, a plaintiff must allege specific facts.

*Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986).  "It is not enough for a complaint

12

under § 1983 to contain mere conclusory allegations of unconstitutional conduct by persons acting under color of state law.  Some factual basis for such claims must be set forth in the pleadings."  *Id.*  A complaint must contain "'either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory.'"  *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

Furthermore, a complaint filed under § 1983 must also show a causal connection between the named defendants and the alleged constitutional deprivation.  A § 1983 complaint must allege that specific conduct by the defendants was the proximate cause of the constitutional injury.  *King v. Massarweh*, 782 F.2d 825, 829 (9th Cir. 1986).  "Congress did not intend § 1983 liability to attach where causation is absent."  *Deaton v. Montgomery County*, 989 F.2d 885, 889 (6th Cir. 1993).  To establish causation, a plaintiff must adduce "an affirmative link . . . [a] moving force that animated the behavior . . . that resulted in the constitutional violations alleged."  *Id*.   When the theory of causation is a matter of pure speculation and is nothing more than an hypothetical argument, the pleadings are insufficient to sustain a compensable § 1983 claim.  *Horn by Parks v. Madison County Fiscal Court*, 22 F.3d 653, 659 (6th Cir. 1994).

Plaintiff Neal's claims against several defendants fail for lack of specificity and/or no causal connection.

### a.  Mr. Roach

Plaintiff Neal mentions Mr. Roach on only one occasion in the statement-of-claim portion of the complaint, and that one occasion is where he identifies Mr. Roach as Plaintiff Dunn's parole officer.  All claims raised by Plaintiff Dunn have been dismissed, however, and

Plaintiff Neal cannot assert a claim on Plaintiff Dunn's behalf.  To the extent Plaintiff Neal seeks to sue Mr. Roach on his own behalf, he fails to set forth any specific facts with respect to Mr. Roach, and he fails to connect any wrongful conduct to Mr. Roach.  Consequently, any claims asserted against Mr. Roach are factually insufficient and must be dismissed.

### b.  George M. Geoghegan III

Plaintiff Neal does not report any specific wrongdoing committed by Clerk Geoghegan in his recitation of facts.  Rather, he repeatedly alleges that Defendant Chief Deputy Clerk Givens was responsible for delaying the CR 81 Writ and for not permitting him to file an appeal of Judge Willett's Order.  The plaintiff sets forth neither the requisite facts nor the causal connection necessary to state any cognizable § 1983 claim against Defendant Geoghegan.

To the extent that the plaintiff seeks to hold Defendant Geoghegan liable based on his position as Clerk of Court, the doctrine of respondeat superior, or the right to control employees, does not apply in § 1983 actions to impute liability onto supervisors.  *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).  Rather, to establish supervisory liability in a § 1983 action, "[t]here must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it.  At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate."  *Bellamy v. Bradley*, 729 F.2d at 421 (citing *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 872-74 (6th Cir. 1982)).  Supervisory liability "must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'"  *Shehee v. Luttrell*,

199 F.3d 295, 300 (6th Cir. 1999) (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)).  Plaintiff Neal fails to allege any facts showing that Defendant Geoghegan encouraged any specific incidents or implicitly authorized, approved or knowingly acquiesced to any unconstitutional conduct.

Accordingly, all claims against Defendant Geoghegan must be dismissed for failure to state a claim upon which relief may be granted.

### c.  David Stengel and Albert B. Chandler III

The only allegation pertaining to Defendants Chandler and Stengel is that neither defendant responded to the CR 81 Writ filed in Jefferson County.  The plaintiff wholly fails to demonstrate how this alleged inaction rises to the level of any constitutional violation.  Consequently, any claims asserted against those defendants must be dismissed for failure to state a claim upon which relief may be granted.

### d.  Keith Hardison

The complaint reveals that Defendant Hardison responded to two of the plaintiff's Open Records Requests, wherein he ultimately advised the plaintiff that the audiotape of the preliminary revocation hearing had been destroyed the last time it was copied.  The plaintiff does not contend that Defendant Hardison destroyed the tape.  Rather, he broadly claims that the "Parole Board" destroyed the tape.  Plaintiff Neal has wholly failed to identify any constitutional deprivation committed by Defendant Hardison, and he has failed to allege facts showing that Defendant Hardison, in his capacity as Executive Director of the Parole Board, encouraged any specific incidents or implicitly authorized, approved or knowingly acquiesced to any unconstitutional conduct thereby subjecting him to supervisory liability.  Therefore, any claims

against that defendant must be dismissed for failure to state a claim upon which relief may be granted.

### e.  Verman Ray Winburn and Linda F. Frank

The plaintiff alleges that Defendants Winburn and Frank were members of the 1998 Parole Board that granted his parole with special conditions.  He wholly fails to demonstrate how their membership on the 1998 Parole Board in any way violates the constitution, and any § 1983 claim arising from the 1998 events is time barred by the one-year statute of limitations.  *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990) (concluding that § 1983 actions in Kentucky are limited by the one-year statute of limitations found in Ky. Rev. Stat. Ann. § 413.140(1)(a)).

The plaintiff also alleges that Defendant Winburn "is still a member of the parole board that issued a warrant returning Plaintiff to prison October 24, 2002."  He fails to explain, however, how Defendant Winburn's mere membership on the Board renders him liable for the parole revocation, and an attachment to the complaint reveals that only Chairman John Coy issued the parole violation warrant (Compl., Ex. EE1).  Because the plaintiff has failed to allege facts demonstrating any action by Defendant Winburn resulting in the violation of any constitutional provision, the plaintiff has failed to state a cognizable claim against that defendant.

### f.  Laurrece Carter-Hatchett, JC, James Provence, and Patricia Combs

In the caption of the complaint, the plaintiff identifies these four defendants as members of the Parole Board.  He fails, however, to mention or reference them elsewhere in the complaint.  While their initials are listed at the bottom of the report of the Final Parole Revocation Hearing, that document reveals that only Lutitia Papailler, Robert Milburn, Theodore

16

Kuster, and MLY took part in the hearing.  The plaintiff has simply alleged no facts demonstrating any wrongdoing on the part of or any constitution violation committed by Defendants Laurrece Carter-Hatchett, JC, James Provence, and Patricia Combs, and any claims asserted against those defendant must be dismissed.

### B.  Hobbs Act

The plaintiff contends that Defendants Frank and Winburn were members of the 1998 Parole Board that required him to pay $110.00 to the Crime Victims Compensation Fund as a condition of his parole.  He alleges that this required payment constituted extortion violative of the Hobbs Act, 18 U.S.C. § 1951.[10]  The plaintiff wholly fails to demonstrate how the payment condition of his 1998 parole constitutes extortion under the Act.  Even if he could demonstrate a violation, the Hobbs Act is a criminal statute, which does not provide for a private cause of action.[11]  The Hobbs Act claim will therefore be dismissed.

---

[10]Under the Hobbs Act,

Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. § 1951(a).

[11]While this issue has not been considered in the Sixth Circuit, those courts that have addressed it have concluded that the Hobbs Act does not give rise to a private right of action.  *See*, *e.g.*, *Wisdom v. First Midwest Bank of Poplar Bluff*, 167 F.3d 402, 408-09 (8th Cir. 1999) ("[N]either the statutory language of 18 U.S.C. § 1951 nor its legislative history reflect an intent by Congress to create a private right of action."); *Faller v. Rogers*, No. 1:05CV-167-M, 2006 WL 314554, at *7 (W.D. Ky. Feb. 8, 2006) (dismissing Hobbs Act claim with prejudice because it does not support a private cause of action); *Bajorat v. Columbia-Breckenridge Dev. Corp.*, 944 F. Supp. 1371, 1377-78 (N.D. Ill. 1996) (listing cases that have uniformly held that the Hobbs Act does not carry an implied private right of action); *Peterson v. Philadelphia Stock Exch.*, 717 F. Supp. 332, 336 (E.D. Pa. 1989) (finding that "the Hobbs Act only provides for criminal sanctions" as neither the Act itself nor the legislative history contains language suggesting the intent or concern for civil relief).  This Court, too, concludes that the Hobbs Act provides no private cause of action.

17

## C.  State-law claims

The state-law claims raised by the plaintiff "are so related to" the federal claims upon which this Court's jurisdiction rests "that they form part of the same case or controversy."  28 U.S.C. § 1367(a).  For this reason, the Court will exercise its supplemental jurisdiction over those claims.

The plaintiff alleges a violation of Sections 1, 2, 14, and 17 of the Kentucky Constitution. To the extent that he alleges any equal protection violation under Sections 1 and 2 of the Kentucky Constitution, the Court will dismiss those claims for the same reasons it dismissed the Fourteenth Amendment equal protection claim earlier in the decision.  To the extent, however, that the plaintiff is raising due process claims under Sections 1, 2, and 14, the Court will allow those claims to proceed against the same defendants against whom it is allowing the § 1983 claims to proceed.

Finally, Section 17 is virtually identical to the Eighth Amendment of the United States Constitution.  *See Riley v. Commonwealth of Kentucky*, 120 S.W.3d 622, 633 (Ky. 2003) ("Section 17 . . . is identical, except that it proscribes 'cruel punishment' instead of 'cruel and unusual punishments.'  We regard this variation in phraseology as a distinction without a difference.").  As the Court has already found that the plaintiff has alleged no facts demonstrating any Eighth Amendment violation, the Court likewise finds that the plaintiff has failed to set forth any violation of Section 17 of the Kentucky Constitution.  That claim will therefore be dismissed.

18

## V. <u>CONCLUSION</u>

For the reasons set forth above, all § 1983 claims will be dismissed except for the following individual capacity claims for damages:  the First and Fourteenth Amendment denial-of-access-to-courts claim against Defendant Sam Givens, Jr., for rejecting the plaintiff's appeal of his CR 81 Writ and the Fourteenth Amendment due process claims against Defendants Paulette Carron, David Mounden, Deborah McGill, Michael O'Connor, John Coy, Lutitia F. Papailler, Robert W. Milburn, Theodore Kuster, MLY, Vertner Taylor, and Hazel M. Combs for their purported wrongdoing and conspiracy during the parole revocation process.  Because the plaintiff's state-law claims arising under Sections 1, 2 and 14 of the Kentucky Constitution are founded upon the same alleged conduct as the continuing § 1983 claims, those supplemental state-law claims will also proceed against those same named defendants.  All other state-law claims will be dismissed.

In allowing the specified § 1983 and state-law claims to proceed, the Court passes no judgment on the ultimate merit of the plaintiff's allegations.

The Court will enter a separate Scheduling Order governing the development of the remaining claims and will enter a separate Order dismissing all other claims.

Date:

cc:     Plaintiff Neal, *pro se*
        Defendants
        General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
        Attorney General, Commonwealth of Kentucky
4411.005

19